(C.D. 3215)

BALFOUR, GUTHRIE & CO., LTD., ET AL. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 6, 1967)

*Glad & Tuttle* (*Edward N. Glad* and *Robert Glenn White* of counsel) for the plaintiffs.
*Edwin L. Weisl, Jr.*, Assistant Attorney General (*S. William Barr* and *Arthur E. Schwimmer*, trial attorneys), for the defendant.

Before RAO and FORD, Judges

RAO, Chief Judge: In the three cases before the court, which have been consolidated for purposes of decision, plaintiffs controvert the action of the customs officials in classifying certain merchandise described on the commercial invoices as galvanized wire commonly used for fencing purposes, designated ".088"," as round iron or steel wire in paragraph 316(a) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and in assessing duty thereon at the rate of 8½ per centum ad valorem, plus an additional duty of ⅒ cent per pound for galvanizing by virtue of the provisions of paragraph 316(a) of the tariff act, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, supplemented by Presidential proclamation, 85 Treas. Dec. 116, T.D. 52462.

Plaintiffs' claim is that said galvanized wire should properly have been classified as fencing wire over 0.08 of an inch within the provision therefor in paragraph 317 of said act, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and subjected to duty at the rate of ¼ cent per pound.

The statutory provisions involved read as follows:

Paragraph 316(a) of the Tariff Act of 1930, as modified by T.D. 54108, *supra:*

Round iron or steel wire:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Valued over 6 cents per pound_____ 8½% ad val.

Paragraph 316(a) of said act, as modified by T.D. 52373 and T.D. 52462, *supra:*

All wire of iron, steel, or other metal (* * *) coated by * * * galvanizing * * * or any other process with zinc, tin, or other metal_____ ⅒¢ per lb. in addition to the rate imposed on the wire of which it is made.

Paragraph 317 of said act, as modified by T.D. 51802, *supra:*

All galvanized wire not specially provided for, not larger
than twenty one-hundredths and not smaller than
eight one-hundredths of one inch in diameter, of the
kind commonly used for fencing purposes; * * *____  ¼¢ per lb.

When the consolidated cases were called for hearing, the testimony of three witnesses was presented and the following exhibits were received in evidence.

Introduced by plaintiffs—

Collective exhibit 1—The front page and pages 6, 9, 10, and 11 of a pamphlet put out by the Bekaert Mills in Belgium, manufacturer of the merchandise in issue, to illustrate some of the uses made of 13-gauge galvanized wire. The front page and pages 6 and 9 were referred to as illustrating lawn fences.

Exhibit 2—A sample of the merchandise in controversy.

Collective exhibit 3—Photostatic copies of the front page and the left side of page 410 of Catalog 12–C of the California Hardware Company, said page 410 illustrating the use to which 13-gauge galvanized wire was put.

Collective exhibit 4—Photostatic copies of illustration and specifications for sheep and hog fences, which specifications include 13-gauge galvanized wire.

Exhibit 5—A photostatic copy of a catalog page reportedly indicating that 13½-gauge wire is used by Bekaert Mills in Belgium in the production of Motto-Gaucho barbed wire.

Exhibit 6—Photostatic copy of catalog page illustrating the use of 13-gauge galvanized wire for lawn fences.

Collective exhibit 7—A photostatic copy of front page and page 1268 of the 1961 Book ASTM Standards, Part 1, Ferrous Metals Specifications, indicating the numerical diameter of 13-gauge zinc-coated poultry netting and fencing wire to be 0.091 of an inch.

The following exhibits were introduced by the defendant:

Exhibit A—A wire gauge table to illustrate the gauge sizes of wire used by the wire industry.

Exhibit B—Page 52 of the Steel Products Manual published by American Steel and Iron Institute indicating the plus and minus tolerances of wires such as that at bar to be 0.003 of an inch.

Exhibit C—Wire Products Catalog illustrating the types of gauge size wire manufactured and advertised for sale for fencing purposes by Colorado Fuel & Iron Corporation.

Exhibit D—Pages 2 to 27 of the United States Steel Farm Products Catalog to illustrate the type of wire manufactured and sold by the United States Steel Corporation for fencing purposes and the wire gauge sizes used in the manufacture of such wire.

Exhibit E—Photostatic copy of United States Department of Commerce pamphlet entitled "Galvanized Woven-Wire Fencing and Barbed Wire" setting forth types of wire and their gauge sizes which are accepted by domestic wire industry for fencing purposes.

Counsel for the plaintiffs agreed to stipulate with the defendant that the domestic producers of galvanized wire have agreed to manufacture only certain sizes of such wire for fencing purposes, as set forth in defendant's exhibit E.

The witness called to testify on behalf of plaintiffs was Donald Cropper who, since 1959, has been in the employ of Balfour, Guthrie & Co., Ltd., as a salesman, and prior thereto had been in charge of production scheduling and control with the K. H. Davis Wire & Cable Corporation, now the Davis Wire Corporation, makers of all types of wire prdoucts. In his present position, Cropper sells various wire products manufactured by the Bekaert Mills of Belgium, which include all types of wire and wire products. He states that he has become personally familiar with the uses made of the galvanized wire he sells by calling on customers and keeping abreast of the market.

Defendant's witnesses were John H. Shank and D. W. Hadsell.

Shank, a graduate of the Colorado School of Mines, and formerly an instructor in experimental engineering at Cornell University, has been employed for 26 years with the Colorado Fuel & Iron Corporation, an integrated steel mill producing a variety of iron and steel items. He is a metallurgical engineer. At the present time, he is chief sales engineer and prior thereto had been superintendent of the quality control department of the Minnequa Works of his company. The Colorado Fuel & Iron Corporation has manufactured and sold wire for fencing purposes for about 50 years. Shank is personally familiar with the types and gauges of wire manufactured and sold in the domestic wire industry as a whole for fencing purposes. At the time of the instant importations and subsequent thereto, he became so familiar due to the fact that it was one of the requirements of his job to know what his company's competition was producing.

Hadsell was a metallurgy graduate of the Michigan College of Mining and Technology. For the past 17 years, he has been with United States Steel Corporation. For the past 2 years, he has served as metallurgical engineer in the Customers Technical Division serving customers by determining what their steel requirements are and conveying that information to the company's producing mills. Prior thereto for 15 years he was manager of metallurgy for barbed and wire products at the Columbia-Geneva Division of his company. In all, he has been in the wire producing business for 35 years. Hadsell is personally familiar with the types of gauges of wire manufactured and sold by the United States Steel Corporation for fencing purposes during the

period in question and since that time inasmuch as it was part of his duties to supervise the manufacturing practices. And in addition he is personally familiar with the types and gauges of wire manufactured and sold in the domestic wire industry as a whole for fencing purposes since it is necessary to keep track of what his company's competitors are doing and supplying to the trade in order for his company to be in a competitive position.

At the incipience of the hearing of these consolidated cases, the parties hereto stipulated and agreed that the merchandise in issue comes within the particular diameters specified in the claimed provisions of paragraph 317 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra*, namely, "not larger than twenty one-hundredths and not smaller than eight one-hundredths of one inch in diameter," and, further, that the wire is galvanized.

The controlling consideration before the court, therefore, is whether plaintiffs have borne their burden of proof to support a holding that the galvanized wire in issue is commonly used for fencing purposes.

On this phase of the case, the following facts appear in the record before the court:

1. According to the three witnesses who testified, 13-gauge galvanized wire is commonly used for fencing purposes within the scope of their personal experience, which is confined, broadly speaking, to the western portion of the United States.

2. The nominal decimal size of 13-gauge wire having the type galvanized coating possessed by the instant wire is 0.0915 of an inch in diameter with a permitted tolerance range of plus or minus three-thousandths of an inch, resulting in top and bottom levels for such gauge wire of 0.0945 and 0.0885 of an inch, respectively.

3. The galvanized wire in issue was not ordered as 13-gauge galvanized wire but specifically as galvanized wire 0.088 of an inch in diameter with a zero minus tolerance and three-thousandths of an inch plus tolerance, which limited the permitted range of such wire from 0.088 of an inch to 0.091 of an inch, and constituted it wire with a nominal decimal diameter of 0.088 of an inch.

4. Wire with a nominal decimal diameter of 0.088 of an inch equates to about 13¼ or 13½ gauge (according to the testimony of both plaintiffs' and defendant's witnesses, which is corroborated by exhibit A).

5. Although 13-gauge wire is not the only gauge wire used for fencing purposes, reference being made in the record to 9-gauge and 11-gauge wires used for making chain link fences, the evidence discloses that 13¼- or 13½-gauge galvanized wire is not commonly used for such purposes.

From the record before the court, even granting *arguendo* that the facts presented in this case are adequate upon which the court may conclude that 13-gauge galvanized wire is commonly used for fencing purposes, it would appear that plaintiffs have failed to prove by credible and probative evidence that the imported galvanized wire with a nominal decimal diameter to 0.088 of an inch equivalent in gauge measurement of 13¼ or 13½ gauge is wire commonly used for such purposes. *United States* v. *National Starch Products, Inc.*, 50 CCPA 1, C.A.D. 809.

The court, therefore, holds that plaintiffs' claim in the protests enumerated in the schedule attached to and made part of this decision for classification of the merchandise in issue within the purview of paragraph 317 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra*, must be overruled.

Judgment will issue accordingly.